UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| THE LANDS COUNCIL,<br><br>　　　Plaintiff,<br><br>　　vs.<br><br>FAYE KRUEGER, Acting Regional Forester of Region One of the U.S. Forest Service; MARY FARNSWORTH, Supervisor of the Idaho Panhandle National Forest; and UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture;<br><br>　　　Defendants. | Case No. CV 09-164-N-EJL-REB<br><br>**REPORT & RECOMMENDATION** |

　　　This is a report and recommendation to District Judge Edward J. Lodge in regard to Defendants' Motion to Lift Injunction (Dkt. 80). Judge Lodge entered final judgment in this case on August 23, 2010, granting summary judgment to Plaintiff and enjoining Defendants (collectively referred to as "the Forest Service") from "proceeding with the timber sales previously awarded and from further awarding any other timber sales for the Bussel 484 Project in the St. Joe Ranger District of the Idaho Panhandle National Forest." Judgment (Dkt. 58).

　　　The Forest Service asks the Court to lift the injunction because it has conducted further environmental analysis under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, has prepared a Final Supplemental Environmental Impact

**REPORT AND RECOMMENDATION - 1**

Statement ("SEIS"), and has issued a new Record of Decision ("2012 ROD").  The Forest Service contends that its actions, described above, have addressed the deficiencies identified in the Court's prior Order (Dkt. 57), and, thus, it has satisfied any conditions necessary for lifting the injunction against the Bussel 484 timber project ("the Project").

Plaintiff counters that the Forest Service has not remedied the identified National Forest Management Act ("NFMA") and NEPA concerns and the injunction should not be lifted.  For the reasons discussed below, the Court recommends that the District Judge grant the motion.

## REPORT

**A.     Background**

The lengthy history and extensive background of this case is already known to the parties, of which the Court will restate here only the salient facts.[1]  Primarily at issue in the summary judgment motions—which resulted in the judgment in Plaintiff's favor—was whether the Forest Service met the standard for maintaining viable wildlife populations in the Project area by using a "proxy-on-proxy" approach to assess such populations.  "The Forest Service may use the amount of suitable habitat for a particular species as a proxy for the viability of that species (habit-as-proxy approach) and may also use habitat as a proxy to measure a species' population, and then to use that species' population as a proxy for the population of other species (proxy-on-proxy approach)."

---

[1] The background information from the Report and Recommendation (Dkt. 51) and the Amended Memorandum Order (Dkt. 57), are incorporated by reference here.

**REPORT AND RECOMMENDATION - 2**

*Lands Council v. McNair*, 629 F.3d 1070, 1081 (9th Cir. 2010) (internal quotation marks and citation omitted). In this case, the Forest Service analyzed the viability of Management Indicator Species ("MIS")—particularly northern goshawk, pileated woodpecker, and marten—using the proxy-on-proxy approach.

Judge Lodge ruled that "[t]he Forest Service's decision to authorize the Project was arbitrary and capricious because its use of habitat-as-proxy to assess the impact of the Project on the viability of MIS populations was flawed." Amd. Order, p. 31 (Dkt. 57). For that reason, he set aside the Forest Service's decision to authorize the Project and remanded the decision to the agency. Amd. Order, p. 32 (Dkt. 57). Judge Lodge also required that "whatever fire plan is in effect at the time of any new supplemental [Environmental Impact Statement ("EIS")] must be evaluated in that EIS." Amd. Order, p. 32 (Dkt. 57). He did not require specifically that the Forest Service complete a new EIS. However, the Order anticipated that the Forest Service might conduct further review and make a new decision about whether a future proposed action would be appropriate in the Project area if the Forest Service desired to proceed with action in that area. The Judgment enjoined the Forest Service, however, from "proceeding with the timber sales previously awarded and from further awarding any other timber sales for the Bussel 484 Project" under the Forest Service's 2008 ROD. Judgment (Dkt. 58).

Defendants appealed the Judgment to the Ninth Circuit Court of Appeals and Plaintiff cross-appealed; that court later granted the parties' motions to voluntarily dismiss the appeals. (Dkts. 70 & 71). Thereafter, the Forest Service undertook to

**REPORT AND RECOMMENDATION - 3**

supplement its EIS for the Bussel 484 Project and issued the new 2012 ROD. The Plaintiff then administratively appealed the 2012 ROD. The Forest Service's Appeal Deciding Officer affirmed the 2012 ROD.

In seeking relief, the Forest Service relies primarily on the 2012 ROD and SEIS and argues there is no need to look to the full administrative record underlying the SEIS to decide whether the injunction should be lifted. Instead, the Forest Service contends the Court's review should be limited to the SEIS, its attachments, and the 2012 ROD. *See* Reply, p. 1, n.2. Plaintiff begs to differ, and argues that certain administrative records support its argument that the SEIS is deficient in several ways, including for reasons that were *not* bases for Judge Lodge's decision that the Forest Service violated NFMA and NEPA in the original EIS.

Plaintiff's new challenges to the SEIS (based on reasons not relied upon for Judge Lodge's judgment in Plaintiff's favor) are outside the boundaries of the present motion.[2] However, in considering whether the Forest Service has met its burden to demonstrate a significant change in the circumstances underlying the Judgment to justify lifting the injunction at this time, the Court has reviewed portions of the record related to the District Judge's earlier decision.

---

[2] For instance, Plaintiff challenges conclusions drawn by the Forest Service about the viability of lynx, fisher, caribou, and wolverine. Pl.'s Resp., pp. 9-12 (Dkt. 85). The District Court's Order did not find that the Forest Service violated NFMA or NEPA on the basis of how it analyzed these species in its EIS. Therefore, any challenge to the Forest Service's treatment of these species is not related to the grounds supporting the injunction issued as part of the Judgment regarding the Forest Service's original EIS and ROD.

**REPORT AND RECOMMENDATION - 4**

B.  **Standards of Law**

Rule 60(b)(5) of the Federal Rules of Civil Procedure permits a litigant "to obtain relief from a judgment or order if, among other things, "applying [the judgment or order] prospectively is no longer equitable." *Horne v. Flores*, 557 U.S. 433, 447 (2009) (brackets in original; internal quotation marks and citation omitted). Rule 60(b)(5) codifies the Court's inherent equity power to modify an injunctive order when circumstances make continued enforcement of the injunction inequitable. *See Bellevue Manor Assoc. v. United States*, 165 F.3d 1249, 1252 (9th Cir.1999); *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932).

The party seeking relief from an injunction must establish that "a significant change either in factual conditions or in law renders continued enforcement" inequitable. *Horne*, 557 U.S. at 447 (citation and internal quotation marks omitted). It is an abuse of discretion if, after the moving party carries its burden, the court "refuses to modify an injunction . . . in light of such changes." *Id.*

C.  **Discussion**

In the Forest Service view of this dispute, the SEIS and the 2012 ROD (1) adequately demonstrate that "the northern goshawk, pileated woodpecker, and marten are present in the Bussel 484 Project area, such that the use of the habitat as proxy approach is appropriate here;" and (2) meet and satisfy the Court's concerns about fire management. Reply, p. 1 (Dkt. 89). In short, the Forest Service argues that the SEIS addresses "requirements of the court, updates the analysis based on *new information* since

**REPORT AND RECOMMENDATION - 5**

the original analysis was completed, and adds information to respond to comments on the draft SEIS." Final SEIS (Dkt. 79-1, p. 4) (emphasis added). The new information the Forest Service considered includes a so-called "white paper" on Management Indicator Species Considerations for the Idaho Panhandle National Forests ("White Paper") that updates the recommendations for analyzing MIS on projects in the Idaho Panhandle National Forests, "in light of recent court decisions" including the decision underlying the injunction in this case. That White Paper is part of the record as an attachment to the SEIS. *See* SEIS, Apx. A. (Dkt. 79-1).

Plaintiff, in response, lodged portions of the administrative record foundational to the SEIS and argues that the SEIS is deficient in several ways, including for reasons that were not bases for the injunction. The Forest Service contends that there is no place for consideration of such matters in regard to its request that the injunction be lifted, because "the [underlying] merits of the SEIS and ROD are not now before the Court," and that the full administrative record need be presented to the Court *only* "[i]f and when there is a complaint filed challenging the SEIS and ROD." Reply, p. 1, n.2 (Dkt. 89).

The Court agrees that the threshold and potentially only issue to decide at this post-judgment phase of this case is whether or not the evidence relied upon by the Forest Service is sufficient alone to demonstrate a significant change warranting lifting the injunction. If it is not, then no further consideration of any portion of the underlying record is needed. If it is sufficient, then the injunction can properly be lifted, but such a decision is not a judicial imprimatur that any new project can go forward. Rather, it

**REPORT AND RECOMMENDATION - 6**

simply means that the train by which the Forest Service can further pursue any sale in the project area is placed back on the tracks, so to speak.  A full review of the administrative record underlying the updated Forest Service decision is more appropriately done in the context of any challenge that may be brought to the 2012 ROD and SEIS.

Further, although Plaintiff points to the administrative record to argue the Forest Service has not complied with NEPA and NFMA in the SEIS and 2012 ROD,[3] its arguments do not overcome the Forest Service's demonstration of a "significant" change in circumstances warranting relief from the injunction.  For instance, the Forest Service points to evidence on population trends, supported in the SEIS by the White Paper and other data, which supports the SEIS's treatment of the MIS.  The Court does not conclude from this record that the SEIS would be found NEPA and NFMA compliant upon review of the entire administrative record underlying the SEIS, which could occur if a challenge is brought to that document and the 2012 ROD.  But for the purpose of lifting the injunction, the record does reflect that the Forest Service has conducted further review and analysis and reconsidered the planned activities in the Project area in its attempt to correct any deficiencies identified in the first EIS and decision, and the Forest Service has

---

[3] For instance, Plaintiff argues that information about the goshawk found in the administrative record was not even considered by the Forest Service in the reformulated SEIS. Pl.'s Resp., p. 4 (Dkt. 85).  Such information included the fact that a bird song recorder placed in the Project area for eight days in 2011 came up with no evidence of the presence of a single goshawk.  Other of Plaintiff's arguments rest on speculation (although no differently in that respect, the Plaintiffs would no doubt argue, than justifications offered by the Forest Service), such as that any goshawk or woodpecker that might have been detected in the Project area may simply have been "passing through."  Pl.'s Resp., pp. 4, 6 (Dkt. 85).  The Court is not persuaded by these types of speculative connections, or disconnections.

**REPORT AND RECOMMENDATION - 7**

concluded after such additional review and analysis that activities can properly proceed in the Project area. Those facts do constitute a significant change in circumstances for evaluating and deciding the propriety of no longer maintaining the injunction. In so deciding, the Court has given due regard to "the Forest Service's discretion to rely on its own data and to discount the alternative evidence proffered by [the plaintiff]." *Lands Council v. Wild West Institute*, 629 F.3d 1070, (9th Cir. 2010).[4] In the usual course of a challenge to an agency's decision, this would be the starting place for determining whether the agency acted within its discretion in approving a particular action.

Hence, the Court finds that the Forest Service, in choosing to gather new information and reexamine the project and then preparing an SEIS and a new ROD, has demonstrated a significant change in the circumstances that led to the injunction. Judge Lodge contemplated that the Forest Service might choose to take another run at the planned activities in the Project Area (or some remodeled iteration of the same) after conducting further review and analysis. Alternatively, the Forest Service might have

---

[4] For example, in *Lands Council v. McNair*, the Ninth Circuit upheld the Forest Service's habitat suitability analysis despite that it had not documented a single MIS presence in the Project area in ten years. 629 F.3d 1070, (9th Cir. 2010). The Court considered whether the species was difficult to detect and found that the Forest Service appropriately used available scientific data and other surveys to support use of the proxy-on-proxy method. *Id.* Here, Plaintiff challenges whether the Forest Service sufficiently proved that some of the MIS were difficult to detect and whether the Forest Service appropriately used available scientific data to reach its conclusions. *See, e.g.*, Pl.'s Resp., p. 6 (discussing whether the Forest Service appropriately relied on a white paper instead of the most recent Forest Plan monitoring report in assessing population trends and whether a Breeding Bird Survey can appropriately support a population trend finding). However, that challenge is more appropriately made in a direct review of the Forest Service's new decision, in which all of the updated administrative records could be considered at the same time in one comprehensive review.

**REPORT AND RECOMMENDATION - 8**

decided not to make any further efforts at such activities, or might have concluded after conducting further review and analysis that it could not adequately support such activities under applicable law.

In other words, nothing required the Forest Service to reconsider and then go forward with the Project. However, if it chose to do so, as it has, then removal of the injunction required, at a minimum, sufficient proof that the Forest Service's 2012 ROD sought to remedy the issues underlying the injunction by gathering new evidence and, based on all the record evidence, reconsidering whether the Project should be approved and which proposed action to follow. The Forest Service has done just that, relying on several studies and other data set forth in the White Paper, and examined further in the SEIS, as it relates to the proposed Project. (Dkt. 79-1). The SEIS itself explains that it "addresses requirements of the court, updates the analysis based on new information since the original analysis was completed, and adds information to respond to comments on the draft SEIS." (Dkt. 79-1, p. 4). Thus, the Forest Service has spoken to the particular detail contemplated by the Court's prior Order and Judgment.

This updated and reconsidered work by the Forest Service, set forth in the SEIS, White Paper, and 2012 ROD, amounts to sufficiently changed circumstances to warrant lifting the injunction. Moreover, lifting the injunction does not prejudice Plaintiff in its ability to challenge the Forest Service's latest decision on the Project. The issue of whether the SEIS meets NEPA and NFMA standards is better left to any challenge to the 2012 ROD, to be considered by a court having access to the full administrative record and

**REPORT AND RECOMMENDATION - 9**

comprehensive briefing to make this type of determination.  Here, the Court has only the 2012 ROD, the SEIS, the White Paper, and some excerpted portions of the administrative record.  Importantly, the Court is not in a position to consider the new issues raised by Plaintiff to the sufficiency of the SEIS and 2012 ROD as some of those issues do not relate to the errors identified in the Order that led to the injunction and the Court does not have the full administrative record or comprehensive briefing on the issues.

The Plaintiff is not left without an opportunity to bring appropriate challenges to such decisions by the Forest Service.  Plaintiff has already filed an administrative appeal of the Forest Decision to pursue activities in the Project Area.  Those are decisions left to the Plaintiff, just as it was the Forest Service to decide whether to go forward in any fashion following the entry of the injunction.  As to any future such dispute, the setting will be in the context of any legal challenge that might be brought against the new decision, in the ordinary course.  In that setting, any challenges to the sufficiency of the 2012 ROD and SEIS can be considered at one time, rather than in a piece-meal or hopscotched manner, and without the potential for incongruent rulings upon the same issues.  *See, e.g.*, *Alliance for Wild Rockies v. Kruger*, CV 12-150-M-DLC, 2014 WL 1614426 at *2 (D. Mont. Apr. 23, 2014) (plaintiffs' "claims regarding new ESA issues require a new lawsuit").

For these reasons, the undersigned recommends granting the Forest Service's motion to lift the injunction.  For the present, and without considering or ruling on any future challenge that may be brought to the SEIS and 2012 ROD, a decision to lift the

**REPORT AND RECOMMENDATION - 10**

injunction allows the Forest Service to continue to manage the Project area based on its analysis and updated review of the Project's impacts, without seeking further action from this Court as to the injunction. The Court has not recommended that the proposed action be approved, on this record, but rather that the administrative and review process should be allowed to move forward, subject to the usual proceedings challenging agency action.

## RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that the District Judge GRANT the Forest Service's Motion (Dkt. 80).

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days. . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: **October 20, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge